IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSEPH CONCHECK,

    Plaintiff,

v.

MARCUS BARCROFT, et al.,

    Defendants.

Case No. 2:10-cv-656

JUDGE SARGUS

MAGISTRATE JUDGE KEMP

## OPINION AND ORDER

This matter is presently before the Court for consideration of Defendants Martin York and M Y Investments' Joint Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, or, Alternatively, to Transfer Venue, and to Dismiss for Failure to State a Claim (Doc. 21); Defendant Marcus Barcroft's Emergency Motion for Court Appointed Counsel (Doc. 23); Defendant Marcus Barcroft's Joinder [motion] to Defendants' Motion to Dismiss (Doc. 29); Plaintiff's Motion for Partial Summary Judgment (Doc. 40); Martin York and M Y Investments' Motion for Stay of Proceedings Relating to Plaintiff's Motion for Partial Summary Judgment (Doc. 41); Martin York and M Y Investments' Rule 56(f) Motion to Withhold Ruling on Joseph Concheck's Motion for Partial Summary Judgment (Doc. 47); and Plaintiff's Motion for Default Judgment Against Defendant Robert Marsh Following Entrance of Default (Doc. 58). For the following reasons, York and M Y Investment's motion to dismiss is **GRANTED in PART** and **DENIED in PART**; Barcroft's motion for appointment of counsel is **DENIED**; Barcroft's motion to join York and M Y Investment's motion to dismiss is **GRANTED**; Plaintiff's motions for default judgment against Marsh and for partial summary judgment are **DENIED without PREJUDICE**; and York's motions to stay proceedings related to the motion for partial summary

judgment and to withhold ruling on the motion for partial summary judgment are **DENIED as MOOT**.

## I.

Plaintiff Joseph Concheck ("Concheck") brings the instant action against Defendants Marcus Barcroft ("Barcroft"), Robert Marsh ("Marsh"), Martin York, and M Y Investments (York and M Y Investments may hereinafter be collectively referred to as "York") with claims for breach of contract, breach of fiduciary duty, fraud, unjust enrichment, conversion, promissory estoppel, violations of the Ohio Securities Act, violations of the Ohio Consumer Sales Practices Act, and for civil RICO violations. Concheck's claims arise from an investment relationship with Defendants, in which they allegedly promised high yield returns on an initial investment of $500,000. According to Concheck, in late 2009, he was approached by Defendants about the investment opportunity. (Compl. ¶ 7.) Concheck subsequently executed an "Escrow Agreement" ("Agreement") with York and M Y Investments. The terms of the Agreement provided that Concheck, the "Depositor," would wire $500,000 into York's bank account. (Compl. Ex. A at 1.) York, the "Escrow Agent," would then transfer the funds into a "trader platform" with high yield returns. (Compl. Ex. A at 1.) The Agreement contains a "non performance [sic] clause" that provides as follows:

> Escrow Agent unconditionally and absolutely promises that if trading has not commenced within 60 days from the date of the deposit of the $500,000USD from the Depositor providing for distributions, Escrow Agent shall be personally LIABLE for the FULL return of the $500,000USD plus an additional $50,000 USD for a total of $550,000 USD to the Depositor. Any and all legal issues will be through the State of Michigan and will follow the laws and guidelines of the State of Michigan.

(Compl. Ex. A at 1.) Another paragraph of the Agreement provides that "[t]his Agreement with respect to the Escrow Agent and Depositor, constitute the entire understanding and agreement of

2

the parties hereto with respect to the subject matter hereof and supersede all prior agreements and understandings, written or oral, between the parties hereto with respect to the subject matter hereof." (Compl. Ex. A at 2.) The agreement is signed by Concheck, and York, although York denies that the signature is his. (York Aff. ¶ 9, Oct. 11, 2010.)

Concheck alleges that he wired $500,000 to York's account as required by the Agreement, but the yields promised by the Agreement were never realized, and that his investment was not returned to him. By Opinion and Order dated October 18, 2010, the Court granted Concheck's Motion for a Preliminary Injunction against Marsh and Barcroft, requiring them to deposit Concheck's $500,000 with the Clerk of this Court. (*See* Doc. 28 at 6.) The Court now considers the various pending motions, beginning with York and M Y Investments' motion to dismiss or transfer venue.

## II.

York and M Y Investments jointly contend that, pursuant to Rule 12(b)(2), the Court lacks personal jurisdiction over them. Alternatively, they argue that venue in the Southern District of Ohio is improper, and that various of Concheck's claims for relief should be dismissed pursuant to Rule 12(b)(6). As stated below, the Court holds that it possesses personal jurisdiction over York and M Y Investments, and that venue in the Southern District of Ohio is proper, but that Counts Two, Seven, Eight, and Nine of the complaint should be dismissed for failure to state a claim upon which relief can be granted.

### A.

#### 1.

A court may have either specific or general jurisdiction over a defendant. Specific jurisdiction is present "when a State exercises personal jurisdiction over a defendant in a suit

3

arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). General jurisdiction, on the other hand, is present "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 415 n.9; *see also Burger King*, 471 U.S. at 473. To decide whether specific personal jurisdiction exists, the Court considers two factors: (1) whether Ohio's long-arm statute "authorize[s] the exercise of jurisdiction over [the] Defendants"; and (2) whether the "exercise of that jurisdiction comports with constitutional due process." *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007).

Pursuant to Ohio's long arm statute, Ohio courts are deemed to have personal jurisdiction over a person "as to a cause of action arising from the person's . . . [t]ransacting any business in this state;" "[c]ausing tortious injury by an act or omission in" Ohio or from the person's "[c]ausing tortious injury in [Ohio] to any person by an act outside [Ohio] committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in [Ohio]." OHIO REV. CODE § 2307.382(A)(1), (3), & (6).

The Sixth Circuit has established the following three-part analysis for evaluating due process in the context of specific personal jurisdiction challenges:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968). *See also Air Prods.*, 503 F.3d at 550; *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). "[P]urposeful

4

availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's] opportunities." *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 478 (6th Cir. 2003) (internal quotations and citation omitted). Personal jurisdiction is proper when purposeful availment has occurred because the defendant "manifestly has availed himself of the privilege of conducting business [in the forum], and because his activities are shielded by the 'benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476. "If a plaintiff can demonstrate purposeful availment, the absence of physical contacts with the forum state will not defeat personal jurisdiction over a non-resident defendant." *Bridgeport Music*, 327 F.3d at 479.

The plaintiff bears the burden of establishing a court's personal jurisdiction over a defendant. *Mich. Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir. 1989). This burden is "relatively slight." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988). In deciding whether personal jurisdiction over a defendant exists, it is within the Court's discretion to hold a hearing or rely on affidavits and the factual allegations of the pleadings without holding a hearing. *Mich. Nat'l Bank*, 888 F.2d at 466. If the Court chooses not to hold a hearing, it must construe the record before it in a light most favorable to the plaintiff. *Id.* Here, the Court concludes that the record is sufficiently developed to determine the question of its personal jurisdiction over York and M Y Investments without a hearing. However, a determination at this stage that personal jurisdiction exists over York and M Y Investments does not relieve Concheck of his obligation of proving the facts supporting jurisdiction at trial. *Id.*

5

**2.**

York, a resident of Sanilac County, Michigan, claims to have never lived or to have transacted any business in the state of Ohio. (York Aff. ¶¶ 1, 3, Oct. 11, 2010.) He further avers that M Y Investments, his registered "doing business as" name, has never transacted business in Ohio. (York Aff. ¶ 6, Oct. 11, 2010.) He denies entering the Agreement and denies ever meeting Concheck prior to Concheck's involvement with the investment that is the subject of this lawsuit. (York Aff. ¶¶ 7–8, Oct. 11, 2010.) York does not deny owning and controlling the bank account to which Concheck wired his $500,000 initial investment. According to him, however, he set up the account for use by Marsh, whom he has known for several years. Marsh, who was legally barred from having a bank account of his own, owed York a substantial sum of money and indicated to York that he needed the account to pursue lucrative investment opportunities. (*See* York Dep. 23–24.) Marsh stated that he would make enough money to repay York, and York would also be able to share in the profits made by Marsh. York essentially asserts that he passively followed Marsh's instructions with regard to the funds that were transferred into the account, and was otherwise not actively involved in the transactions.

In his complaint, Concheck, an Ohio resident, alleges that York and M Y Investments conduct business in Ohio. (Compl. ¶¶ 3–4.) Further, at the hearing on his motion for a preliminary injunction, Concheck testified that York had participated in phone calls discussing the investment both before and after Concheck signed the Agreement. (*See* Doc. 30 at 36–37, 50.) Finally, the Agreement, purportedly signed by York, indicates that Concheck is an Ohio resident. (*See* Compl. Ex. A. at 1.) While York's testimony and affidavits contradict Concheck's version of events as to York's level of participation in the investment, when

6

construed in Concheck's favor, the record supports the Court's finding that it possesses personal jurisdiction over both York and M Y Investments.

The Court first concludes that York is subject to Ohio's long-arm statute. The Supreme Court of Ohio has ruled that the phrase "transacting any business" in the long-arm statute is broad in scope. *See Ky. Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 480 (Ohio 1990). In *Kentucky Oaks Mall*, it held that "a commercial nonresident lessee, for purposes of personal jurisdiction, is 'transacting any business' within the plain and common meaning of the phrase, where the lessee negotiates, and through the course of dealing becomes obligated, to make payments to its lessor in Ohio." *Id.* While the present case deals with the negotiation of a contract and not a lease, the situation is analogous—York negotiated a contract with Concheck, a resident of Ohio, and through the terms of that contract became obligated to pay Concheck. York accordingly transacted business in Ohio and this suit arises from the specific transaction in which he partook. Similarly, York also can be considered to have caused tortious injury to Concheck in Ohio by an act or omission outside this state, with knowledge that Concheck was an Ohio resident; indicating that York could reasonably have expected injury to occur in Ohio.

The Court also concludes that York's due process rights will not be offended by the Court's exercise of personal jurisdiction over him. Turning to the three part test first announced by the Sixth Circuit in *Southern Machine*, the Court must first consider whether York purposefully availed himself "of the privilege of acting in the forum state or causing a consequence in the forum state." *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d at 381. When the record is construed in favor of Concheck, it reveals that York engaged in active negotiations and discussions with Concheck, an Ohio resident, concerning the investment, and executed the Agreement with Concheck. His contacts with Ohio were thus neither random nor inadvertent,

7

but, rather, were purposeful and deliberate. Accordingly, York availed himself of the privilege of acting in Ohio, or, at the very least, of causing a consequence in Ohio—the alleged injury to Concheck.

The other two factors of the *Southern Machine* inquiry are also present. Concheck's claims arise from York's activities affecting Ohio. Finally, the exercise of personal jurisdiction over York in Ohio based on his contacts with Ohio is reasonable. Factors to be balanced in determining reasonableness include the burden on the defendant, the interests of the forum state, and the interests of the plaintiff in obtaining relief. *See Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003) (citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113 (1987)). Here, Concheck's significant interest in obtaining relief coupled with Ohio's interest in the resolution of this matter, outweigh any burden on M Y Investments and York in having to defend this case in Ohio. While the burden of having to travel from Michigan to Ohio is not trivial, it is not comparable to a situation of a defendant possibly being compelled to litigate from across the country or from the far side of the World. For the above-stated reasons, the Court holds that it possesses personal jurisdiction over York and M Y Investments.

**B.**

York next asserts that venue in the Southern District of Ohio is inappropriate and that this action should therefore be dismissed or transferred to Michigan. In so doing, York points to the final sentence of the nonperformance clause of the Agreement, which states that "[a]ny and all legal issues will be through the State of Michigan and will follow the laws and guidelines of the State of Michigan." York claims that this provision operates as a forum selection clause requiring legal actions to be brought in the state of Michigan. Concheck, on the other hand,

8

argues that this sentence is at best a choice of law provision, requiring Michigan law to govern any dispute. The Court agrees with Concheck.

The sentence at issue undoubtedly represents an intent of the parties to have disputes arising under the Agreement be governed by Michigan law. However, as noted by Concheck, it does not include any reference to lawsuits or legal actions, but instead only refers to "legal issues." Black's Law Dictionary defines the term legal issue to mean "[a] legal question, [usually] at the foundation of a case and requiring a court's decision." BLACK'S LAW DICTIONARY (9th ed. 2009). The term "legal question" cannot be considered synonymous with "litigation", "lawsuit," "dispute" or like terms. Similarly, the phrase "through the State of Michigan" lacks any mention of specific courts or types of courts in Michigan, and does not, when read literally, mandate that resolution of disputes occur geographically within Michigan. Accordingly, this sentence cannot be interpreted as a forum selection clause, but instead is best interpreted as indicating that any legal questions will be decided by Michigan law.

York and M Y Investments also move for a transfer of venue to Michigan pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Sixth Circuit has held that

> in ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of "interests of justice."

*Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)). Private interests considered by courts have included the plaintiff's forum preference; the defendant's forum preference; where the claim

9

arose; the convenience of the parties; the convenience of the witnesses to the extent that witnesses may be unavailable for trial; and the location of books and records. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3rd Cir. 1995). Public interests considered by courts have included, *inter alia*, the enforceability of a resulting judgment; practical considerations; whether court congestion creates administrative difficulty in one fora relative to the other; and the local interest in deciding local controversies at home. *Id.*

In considering a motion to transfer venue, Courts normally defer to a plaintiff's choice of forum. *Id.* at 880. A valid forum selection clause "should receive neither dispositive consideration . . . nor no consideration" but rather should "be a significant factor that figures centrally in the district court's calculus." *Stewart Organization*, 487 U.S. at 29, 31. Here, the central focus of York's motion to transfer venue is the assumption that the Agreement contains a forum selection clause evidencing the parties intent that lawsuits be brought in a Michigan venue. According to York, the forum selection clause is a private factor weighing heavily in favor of transfer. As stated above, the Court has concluded that the Agreement does not contain a forum selection clause. When the purported forum selection clause is removed from the equation, a balancing of the required factors tilts slightly in Concheck's favor. In this regard, Concheck's preferred Ohio forum essentially deadlocks against York's preferred forum in Michigan. Similarly, while York, a resident of Michigan, is undoubtedly inconvenienced by having to travel to Ohio to litigate this case, Concheck would be equally inconvenienced if the case were transferred to Michigan. While Concheck's claims arguably arose in Michigan, as the Court concluded in Part II.A *supra*, York's alleged actions had substantial effects on Ohio. Furthermore, although each side claims that witnesses are located in their preferred fora, nothing in the record supports a conclusion that necessary witnesses would be unavailable for trial here

in Ohio. Finally, nothing in the record suggests that any of the public factors weigh strongly in favor of either the Ohio or Michigan forum.

In the Court's view, the compelling factor in the above analysis, especially given the nearly equal weight of the public and private factors, is the slight deference afforded the plaintiff's choice of forum absent a forum selection clause. Accordingly, York and M Y's motion to transfer venue is denied.

### C.

York next argues that Counts Two through Nine of the complaint should be dismissed pursuant to Rule 12(b)(6) on various grounds. A Rule 12(b)(6) motion requires dismissal if the complaint fails to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it] [is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Twombly*, 550 U.S. at 55) (internal quotations omitted).

### 1.

York first asserts that Counts Seven (breach of the Ohio Securities Act) and Eight (breach of the Ohio Consumer Sales Practices Act) should be dismissed because the Agreement's choice of law provision mandates the application of Michigan law to this dispute. Concheck contends that the choice of law provision should only be interpreted as applying to his contract claims.

As stated in Part II.B *supra*, the final sentence of the nonperformance clause of the Agreement clearly operates as a choice of law provision. The scope of that provision must now be considered. In cases based on diversity jurisdiction, this Court must apply Ohio's conflict of law rules when the applicable law is in dispute. *Johnson v. Ventra Group, Inc.*, 191 F.3d 732, 738 (6th Cir. 1999). In cases where parties have included a choice of law provision in their contracts, Ohio courts apply § 187(2) of the Restatement (Second) of Conflict of Laws in determining what forum's law to apply. *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 453 N.E.2d 683, 686 (Ohio 1983). Section 187(2) provides that:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>>
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1971).

As there is no indication that either of the two exceptions are applicable to this case, the Court finds that the choice of law provision applies to all claims related to the Agreement. Michigan, as the state of residence of Defendant's York and Marsh, and the location of the bank where Concheck's funds were wired, has a substantial relationship to the Parties and the transaction at issue. Additionally, there is no indication that application of Michigan law would lead to a result contrary to the fundamental policy of Ohio. Finally, despite Concheck's assertion to the contrary, the language of the choice of law provision is broad, applying to "any and all

12

legal issues." Even if this provision could be interpreted as applying to only claims for breach of contract, it would still apply to both Concheck's Ohio Securities Act claim, which alleges that the Agreement itself is a security, and Concheck's Ohio Consumer Sales Practices Act claim, which is predicated on the allegation that the Agreement is a consumer transaction as defined by that Act.

As Michigan law controls claims arising from the Agreement, Concheck is precluded from bringing claims pursuant to Ohio statutory law that may have arisen in relation to the Agreement. Counts Seven and Eight of the complaint are accordingly dismissed as to York and M Y Investments.

**2.**

Count Two of the complaint alleges that Defendants breached a fiduciary duty that they owed to Concheck. York asserts that this claim should be dismissed because Concheck has failed to allege sufficient facts to satisfy the *Iqbal-Twombly* plausibility standard. As a prerequisite to a claim for a breach of fiduciary duty, a plaintiff must first sufficiently allege that a fiduciary relationship existed. Under Michigan law, a fiduciary relationship "exists when there is a reposing of faith, confidence, and trust and the placing of reliance by one on the judgment and advice of another." *Farm Credit Servs. of Mich.'s Heartland, P.C.A. v. Weldon*, 591 N.W.2d 438, 447 (Mich. Ct. App. 1998). As York notes, contractual obligations do not ordinarily give rise to fiduciary relationships. *See Horizon Painting, Inc. v. Adams*, Nos. 265789; 266717, 2007 Mich. App. LEXIS 508, at *3 (Mich. Ct. App. Feb. 27, 2008) ("there is no authority for the proposition that a fiduciary relationship exists between parties to contractual agreements as in this case").

In the Court's view, Concheck has failed to sufficiently allege the existence of a fiduciary relationship. Count Two of Concheck's complaint contains the allegation that: "Defendants owed plaintiff fiduciary duties pursuant to the special confidence and trust reposed in the integrity and fidelity of defendants that all parties understood existed in the relationship related to plaintiff's investment." (Compl. ¶ 23.) While the Court must accept as true the factual allegations of the complaint, it is not bound to accept legal conclusions couched as factual allegations. Paragraph 23 essentially states a bare conclusion that a fiduciary relationship existed between Concheck and Defendants. That conclusion is not supported by other allegations of the complaint. In this regard, the gravamen of the complaint centers on the terms of the Agreement. Concheck alleges that Defendants represented that the guarantees of the investment program would be "contractually enforced," (Compl. ¶ 12), but fails to make specific allegations tending to support a conclusion that Defendants were in a special position of trust vis-à-vis Concheck beyond an ordinary, arms-length contractual relationship. For instance, there are no allegations tending to demonstrate on what basis Concheck placed special confidence or trust in Defendants.

Accordingly, because Count Two fails to state a claim that is plausible on its face, it is also dismissed as to York and M Y Investments.

### 3.

York next asserts that Counts Three (fraud) and Five (conversion) should be dismissed because they simply restate and/or are otherwise inconsistent with Concheck's claim for breach of contract. Relatedly, York argues that Counts Four (unjust enrichment) and Six (promissory estoppel) should be dismissed because of the presence of an express contract in this case. Alternatively, York contends that Concheck's fraud claim is barred by the Agreement's integration clause, which York asserts limits the consideration of evidence external to the

Agreement. However, York's arguments are not well taken as, pursuant to Rule 8, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." FED. R. CIV. P. 8(d)(3). As noted by Concheck, the necessity of this rule is aptly illustrated by the circumstances of this case, where York challenges the Agreement's validity. If the Agreement is ultimately deemed unenforceable, Concheck may still be able to succeed on his alternative theories of recovery. On the other hand, if the Agreement is found to be valid, Concheck may very well be precluded from recovering on theories that are inconsistent with the presence of an enforceable contract.

### 4.

Finally, York contends that Concheck's claim for a civil violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"), should be dismissed for failing to plead with specificity the allegedly fraudulent acts that are the basis of the claim. To plead a civil RICO claim, a plaintiff must allege, *inter alia*, a pattern of racketeering activity. *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006). Here, Concheck alleges mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343 as the predicate acts of racketeering engaged in by Defendants. (Compl. ¶ 60.) However, as fraud is an element of these predicate acts, Concheck's complaint must meet the heightened pleading requirements of Rule 9(b) in pleading these acts. *See Bender v. Southland Corp.*, 749 F.2d 1205, 1215–16 (6th Cir. 1984) (dismissal of civil RICO claim upheld where elements of mail fraud were not pled with particularity).

In addition to the basic pleading requirements found in Rule 8, rule 9(b) specifies that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Rule 9(b)'s particularity requirement does

not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). In the Sixth Circuit, Rule 9(b)'s heightened pleading standard has been interpreted to require "plaintiffs to 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993)). Failure to comply with the heightened pleading requirements of Rule 9(b) is treated as a failure to state a claim for which relief can be granted. *U.S. ex rel. Howard v. Lockheed Martin Corp.*, 499 F. Supp. 2d 972, 976 (S.D. Ohio 2007) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999)).

In the instant case, Concheck's RICO claim fails to specifically allege the time and place of the communications underlying the alleged mail and wire fraud. Accordingly, Count Nine fails to state a claim upon which relief can be granted and is dismissed as to York and M Y Investments.

### III.

The Court next considers Barcroft's Emergency Motion for Court Appointed Counsel (Doc. 23) and Barcroft's motion to join York's motion to dismiss (Doc. 29). Barcroft's motion for appointment of counsel is denied, as no right to the appointment of counsel exists in civil actions. *See Watson v. Moss*, 619 F.2d 775, 776 (8th Cir. 1980) (per curiam) ("There is no constitutional or statutory right for an indigent to have counsel appointed in a civil case."). The Court, however, will allow Barcroft to join York's motion to dismiss. While the Court has already ruled that it possesses personal jurisdiction over Barcroft (see Doc. 28 at 2), the Court's

bases for dismissing Counts Two, Seven, Eight, and Nine of the complaint as to York and M Y Investments are equally applicable to Barcroft. Accordingly, those counts are also dismissed as to Barcroft.

### IV.

On January 21, 2011, the Clerk entered Marsh's default. Concheck subsequently moved for a default judgment. However, as this case involves multiple defendants, an entry of judgment against Marsh is not appropriate at this time. *See, e.g., Frow v. De La Vega*, 82 U.S. 552 (1872); *Kimberly v. Coastline Coal Corp.*, No. 87-6199, 1988 WL 93305, at *3 (6th Cir. Sept. 9, 1988) (per curiam) ("When a default is entered against one defendant in a multi-defendant case, the preferred practice is for the court to withhold granting a default judgment until the trial of the action on the merits against the remaining defendants. If plaintiff loses on the merits, the complaint should then be dismissed against both defaulting and non-defaulting defendants.") The Court therefore denies Concheck's motion for default judgment against Marsh without prejudice. At such time as the merits of this action are finally resolved, Concheck may refile that motion.

### V.

The Court also denies without prejudice Concheck's motion for partial summary judgment (Doc. 40). The Court agrees with York that such motion is premature, given York's lack of opportunity to conduct discovery in this case. Concheck may renew his motion for summary judgment at the close of discovery. Additionally, York's motions to stay proceedings related to Concheck's motion (Doc. 41) and to withhold ruling on Concheck's motion for partial summary judgment (Doc. 47) and are denied as moot.

17

## VI.

For the foregoing reasons, Defendants Martin York and M Y Investments' Joint Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, or, Alternatively, to Transfer Venue, and to Dismiss for Failure to State a Claim (Doc. 21) is **GRANTED in PART** and **DENIED in PART**; Defendant Marcus Barcroft's Emergency Motion for Court Appointed Counsel (Doc. 23) is **DENIED**; Barcroft's motion for Joinder to Defendants' Motion to Dismiss (Doc. 29) is **GRANTED**; Plaintiff's Motion for Partial Summary Judgment (Doc. 40) and Motion for Default Judgment Against Defendant Robert Marsh Following Entrance of Default (Doc. 58) are **DENIED without PREJUDICE**; and Martin York and M Y Investments' Motion for Stay of Proceedings Relating to Plaintiff's Motion for Partial Summary Judgment (Doc. 41) and Rule 56(f) Motion to Withhold Ruling on Joseph Concheck's Motion for Partial Summary Judgment (Doc. 47) are **DENIED as MOOT**. Counts Two, Seven, Eight, and Nine are dismissed as to York, M Y Investments, and Barcroft.

**IT IS SO ORDERED.**

8-2-2011
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**