UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOSEPH CONCHECK,**

    **Plaintiff,**

v.

**MARCUS BARCROFT, et al.,**

    **Defendants.**

Case No. 2:10-cv-656
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court on Defendant Marcus Barcroft's motion for summary judgment. (Doc. No. 99.) For the reasons set forth below, that motion is **DENIED**.

### I. BACKGROUND

This lawsuit arises out of an alleged fraudulent investment scheme perpetrated by Defendants Marcus Barcroft, Robert Marsh, Marty York, and MY Investments. Plaintiff was initially solicited regarding the investment at issue by Mr. Barcroft. (Aff. of Joseph Concheck at ¶ 1, Doc. No. 117, Ex. 1; Oct. 12, 2010 Prelim. Inj. Hearing Tr. at 36-38, Doc. No. 117, Ex. 2; October 19, 2010 Prelim. Inj. Hearing Tr. at 41-43, Doc. No. 117, Ex. 3). Mr. Barcroft provided Plaintiff with a term sheet regarding the investment, including the guarantees of both profits and returns. (Doc. No. 117. Ex. 1 at ¶ 2 & Ex. A; Ex. 2 at 37-40; Ex. 3 at 41.)

Mr. Barcroft represented to Plaintiff that, in consideration for his initial investment of $500,000, he was guaranteed profits through an investment program with high yield returns. If trading was not commenced within 60 days from the date of the deposit, Plaintiff would receive $550,000. Once trading commenced, Plaintiff became entitled to an agreed upon payout of

profits. Specifically, Plaintiff was entitled to six payouts each totaling between $1,000,000 to $3,000,000 each (or totaling $6,000,000 to $18,000,000 in the aggregate), with the first payout to be received 30 days from the commencement of trading. (*Id.*, Ex. 1 at Ex. A.)

Mr. Barcroft provided Plaintiff with an Escrow Agreement to be entered into between Plaintiff and Mr. York setting forth the same terms. (*Id.*, Ex. 1 at ¶ 2 and Ex. B; Ex. 2 at 36-42; Ex. 4, January 6, 2010 Email). In the correspondence attaching the Escrow Agreement, Mr. Barcroft stated, among other things:

> Please Note: My previous experience has been extremely positive with Marty York. He has refunded my Clients' money when other, smaller programs failed to perform. I personally feel very comfortable with Mr. York, and his associate Robert Marsh. Had I expendable cash, I would enter the Program.

(*Id.*, Ex. 4.)

On January 13, 2010, after signing the Escrow Agreement, Mr. Concheck wired his $500,000 initial investment into Mr. York's bank account per the instructions he was given by Mr. Barcroft. (*Id.*, Ex. 1 at ¶3-4; Ex. 2 at 10-11, 45-46.)

In relevant part, Mr. Barcroft further represented in emails to Plaintiff:

> [On February 4, 2010:] I have been told that Trading will begin no later than Feb 15th, with the first proceeds approximately 30 days (March 15th) there after [sic]. Please note, the Trade Group has paid out continuous since the Program's inception including my close friend and colleague. We are well on our way. . . .
>
> [On April 16, 2010:] As of this moment, I have been told that we are experiencing a 10-15 banking day delay . . . . Please do note however, my colleague, Robert Marsh, has been paid from this Program previously, and has expressed his full confidence to me that we will all receive proceeds . . . . Should your confidence be shaken to where you do NOT wish to wait the 10 to 15 banking days, the letter from Marty York also emphasizes your right to request a refund, of which you will still be eligible for an additional $50,000, even though the Program has successfully traded. . . .

2

> [On April 16, 2010:] This letter is to inform you that the Trade Program went well as expected, and profits have been successfully earned. . . .
>
> [On May 12, 2010:] It is with great displeasure that I am to inform you the Trading Program you entered into for $500,000 USD has not performed as it has previously and is now closed permanently. Unfortunately, no profit has been achieved, and as such, you will be receiving a full refund, as guaranteed in your Escrow Agreement, dated January 6th, 2010.

(*Id.*, Ex. 1 at Ex. D.) Plaintiff did not receive any refund of his investment.

Plaintiff filed this action, alleging, *inter alia*, ten causes of action against Mr. Barcroft. Plaintiff has indicated that he intends to pursue only his breach of contract, breach of fiduciary duty, fraud, and promissory estoppel claims against Mr. Barcroft at trial.

The deadline for filing dispositive motions was February 15, 2012. Mr. Barcroft filed his motion for summary judgment on July 2, 2012. At the final pretrial conference, the Court indicated that it would consider Mr. Barcroft's motion and directed Plaintiff to file a memorandum in opposition, which he did. (Doc. No. 115.)

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby, Inc.*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the

3

requirement that a dispute be "genuine" means that there must be more than some metaphysical doubt as to the material facts"). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

## III. ANALYSIS

In his motion for summary judgment, Mr. Barcroft only addresses Plaintiff's breach of contract claim. As to that claim, he argues that he is not a party to the contract and therefore cannot be held liable. Mr. Barcroft is correct that the general rule is that an agent acting for a disclosed principal is not personally liable on a contract. Restat 2d of Agency, § 320. However, comment a to that section indicates that an agent may become liable on a contract, although not a party to it, if the agent purports to make a contract which he is not authorized to make. In other words, if the agent undertakes to contract as agent for a disclosed principal in a manner which is outside the scope of authority conferred on him by his disclosed principal.

Here, Mr. Barcroft represented that he was acting as an agent of both Mr. York and Mr. Marsh. (Doc. No. 117, Ex. 1; Ex. 2 at pp. 36-42; Ex. 4.) In doing so, *inter alia*, he provided the Escrow Agreement that was purportedly signed by Mr. York. (*Id.*, Ex. 1 at ¶ 2 and Ex. B; Ex. 4.) Mr. York testified, however, that he never signed the agreement. (*Id.*, Ex. 2 at p. 26.) When viewing this evidence in the light most favorable to Plaintiff, and drawing all reasonable inferences in his favor, the Court concludes that Mr. Barcroft has failed to show that there are no genuine issues of material fact in regard to whether he acted within the scope of his agency authority. If he acted outside that scope, he can be held liable for breach of the Escrow Agreement. Accordingly, his motion for summary judgment on that claim for relief is not well

4

taken.

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant Marcus Barcroft's motion for summary judgment. (Doc. No. 99.) Thus, the claims for relief that remain pending against Mr. Barcroft are breach of contract, breach of fiduciary duty, fraud, and promissory estoppel. The Clerk is **DIRECTED** to mail a copy of this Opinion and Order to Mr. Barcroft at 68 Paseo Verde, San Clemente, California 92673 and to email a copy to marcusbarcroft@gmail.com.

**IT IS SO ORDERED.**

9-28-2017
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**